# IN THE COURT OF APPEALS OF IOWA

———————————

No. 25-0394
Filed April 15, 2026

———————————

**Jason Asa Grulkey,**
Applicant–Appellant,

v.

**State of Iowa,**
Respondent–Appellee.

———————————

Appeal from the Iowa District Court for Linn County,
The Honorable Patrick R. Grady, Judge.

———————————

**AFFIRMED**

———————————

Siobhan Briley of Ellis & Winters LLP, Raleigh, North Carolina,
attorney for appellant.

Brenna Bird, Attorney General, and Timothy M. Hau, Assistant
Attorney General, attorneys for appellee.

———————————

Considered without oral argument
by Greer, P.J., Ahlers, J., and Telleen, S.J.
Opinion by Ahlers, J.

**AHLERS, Judge.**

Jason Grulkey pleaded guilty to and was sentenced for third-degree burglary after he was found with materials taken from a building on a construction site. He filed an application for postconviction relief (PCR) claiming his attorneys in the underlying criminal proceedings were ineffective. The district court denied the application. Grulkey appeals.

## I. Background Facts and Procedural History

Cedar Rapids police officers were alerted to be on the lookout for a suspect in a recent burglary. A few days later, two officers saw Grulkey riding a bike loaded with boxes and wearing clothing similar to that of the alleged perpetrator of the prior burglary. They lost sight of Grulkey, so they communicated with other officers to try to locate him.

Other officers spotted Grulkey with his bike heading toward Grulkey's friend's house. When Grulkey spotted the officers, he changed direction to head toward the back entrance to the property. Grulkey testified at his PCR trial that he took this evasive action because he had an outstanding warrant for his arrest. Although the record is not clear when, at some point Grulkey left the bike and its contents in his friend's driveway. More officers arrived and detained Grulkey before he could enter the home. When officers asked Grulkey for his name, he gave the name of the homeowner.

Officers noticed the boxes in plain view on the bike had shipping labels and contained construction materials. After communicating with the manager of the construction company to which the boxes were addressed, officers determined that—between the time the construction crew stopped working on the project the night before and the next morning when Grulkey was detained—someone had removed the screws to a board used as a

makeshift door to the garage on the construction site and stolen construction materials from inside the garage. The stolen materials were the ones found on Grulkey's bike. Officers also searched a green bag hanging from the handlebars of Grulkey's bike and found a drill, drill bits, and Grulkey's wallet.

Grulkey was charged with burglary in the third degree as a habitual offender, theft in the second degree as a habitual offender, possession of burglary tools, and providing false identification. His trial counsel filed a motion to suppress the evidence found with the bike. But after examining a video and photos from the scene that showed the construction materials in plain view on the bike, she concluded the motion was meritless, so she withdrew it. When she would not refile the motion, Grulkey sought and obtained new counsel.

Grulkey's new counsel was aware that Grulkey's previous counsel did not believe a motion to suppress had merit. And because the prosecutor indicated that the State would keep the habitual offender enhancement in place if a motion to suppress was pursued—creating what defense counsel described as an "all or nothing" situation—counsel determined that refiling a motion to suppress was too risky. Instead, he negotiated a favorable plea deal whereby Grulkey would plead guilty to burglary in the third degree as a class "D" felony. In return, the State dropped the habitual-offender enhancement and dismissed the remaining charges. This reduced Grulkey's potential term of incarceration from thirty-two years and one month (with a minimum of six years) to a maximum of five years. Grulkey agreed to the deal, pleaded guilty, and was sentenced accordingly.

Grulkey then filed a PCR application claiming his attorneys were ineffective. The district court denied the application, and Grulkey appeals.

## II.    Standard of Review

Our review of applications for PCR is for errors at law.  *Doss v. State*, 961 N.W.2d 701, 709 (Iowa 2021).  But when a PCR application is based on a claim of ineffective assistance of counsel, it raises constitutional issues that we review de novo.  *Id.*  As part of our de novo review "we give weight to the lower court's findings concerning witness credibility."  *Ledezma v. State*, 626 N.W.2d 134, 141 (Iowa 2001).

## III.   Analysis

On appeal, Grulkey argues his attorneys were ineffective by (1) failing to file a motion to suppress the evidence found in the green bag; (2) failing to adequately advise him regarding the terms of his guilty plea; and (3) allowing him to plead guilty to a crime without a factual basis.

Both our state and federal constitutions guarantee a criminal defendant effective assistance of counsel.  *Trane v. State*, 16 N.W.3d 683, 692 (Iowa 2025).  A PCR applicant establishes ineffective assistance of counsel by proving (1) trial counsel failed to perform an essential duty and (2) prejudice resulted.  *Id.*  Grulkey is required to prove both elements, so failure to prove either element is fatal to his claim.  *See Sothman v. State*, 967 N.W.2d 512, 522 (Iowa 2021).  And because Grulkey pleaded guilty, to establish the prejudice element, he must prove that, but for counsel's errors, he "would not have pleaded guilty and would have insisted on going to trial."  *See id.* at 523 (quoting *Doss*, 961 N.W.2d at 709).

### A.      Motion to Suppress

Grulkey's claim that his attorneys were ineffective for failing to pursue a motion to suppress the evidence in the green bag fails on both the breach-of-duty and prejudice elements.

As to the breach element, counsel is presumed effective, and it is Grulkey's burden to prove otherwise. *See id.* at 522. Because miscalculated tactics do not necessarily amount to ineffective assistance, we do not second-guess reasonable tactical decisions made by counsel. *Lamasters v. State*, 821 N.W.2d 856, 866 (Iowa 2012).

Counsel's decision not to pursue efforts to suppress the evidence found in the green bag was a tactical decision, and it was a reasonable one. Assuming counsel could have successfully suppressed that evidence, it probably would have helped Grulkey defend against the burglary and possession-of-burglary-tools charges. But it would have provided little to no help defending the theft charge. Grulkey still faced the problem that he had enough stolen construction equipment strapped on the back of his bike to constitute felony theft. And, since he was a habitual offender, he faced up to fifteen years of incarceration with a minimum of three years on that charge alone. *See* Iowa Code § 902.9(1)(c) (2022) (setting maximum term of incarceration of fifteen years for a habitual offender); *see also id.* § 902.8 (setting minimum term of three years for a habitual offender). Couple that with the fact that the prosecutor indicated the State would not back off the habitual-offender enhancement if Grulkey pursued a suppression motion, and it became a very reasonable tactical decision (and thus no breach of duty) for counsel to forgo pursuing suppression of the evidence in the green bag and instead focus on pursuing a favorable plea offer, which he was able to achieve.

For many of the same reasons Grulkey failed to prove a breach of duty, Grulkey also failed to prove prejudice. As noted, even if counsel had successfully achieved suppression of the evidence in the green bag, Grulkey still faced strong evidence of felony theft as a habitual offender, which carried up to fifteen years in prison with a minimum of three years. By forgoing suppression efforts to keep the door open to plea negotiations, counsel successfully achieved a favorable plea deal that resulted in dismissal of all but one charge and a maximum sentence of five years. Only Grulkey's self-serving testimony supports his claim that, but for counsel's failure to file a motion to suppress the evidence in the green bag, he would not have pleaded guilty and insisted on going to trial. This testimony is unconvincing in the face of the disparity in possible sentence lengths and the strength of the State's case even without the evidence found in the green bag. *See Doss*, 961 N.W.2d at 714 ("Courts should not upset a plea solely because of post hoc assertions from a defendant about how he would have pleaded but for his attorney's deficiencies. Judges should instead look to contemporaneous evidence to substantiate a defendant's expressed preferences." (citation omitted)). In short, Grulkey failed to establish any prejudice to him resulting from counsel's failure to pursue efforts to suppress the evidence found in his green bag.

## B.  Failure to Adequately Advise Regarding the Guilty Plea

Grulkey's guilty plea was done in writing. He argues plea counsel was ineffective for failing to adequately advise him of the terms of the plea. He claims counsel sent his investigator to get Grulkey's signature on the plea document without explaining the contents of it. As a result, Grulkey contends he was not aware that he was pleading to a felony, and had he known the charge was a felony, he would not have pleaded guilty to it.

Plea counsel's testimony and the written guilty plea itself rebut Grulkey's claim that he did not know he was pleading guilty to a felony. Grulkey's plea counsel testified that he always goes through guilty pleas with clients when he sends an investigator to get the required signature. *See Adams v. State*, 269 N.W.2d 442, 444–45 (Iowa 1978) (relying in part on plea counsel's testimony at PCR proceedings to determine whether the defendant's plea was knowing and voluntary). Counsel also testified that he instructs his investigator to advise clients not to sign the plea if they have questions or are otherwise unsure about signing. This testimony went unrebutted. Additionally, as plea counsel noted, the original felony charge of third-degree burglary was not changed by the plea agreement. Instead, the enhancements to the charge were dropped along with the other charges. So Grulkey had no reason to think the charge had somehow become a misdemeanor. And the written guilty plea contained a checklist of potential crimes, and only the box marked "Burglary—Third Degree" was marked. That box was under a subsection labeled "Class D Felonies."

Based on our de novo review revealing the above facts, we find plea counsel adequately advised Grulkey of the terms of the plea agreement and the terms of the written guilty plea. We also find Grulkey knowingly and intelligently pleaded guilty to the felony charge of burglary in the third degree. Therefore, plea counsel did not breach an essential duty and was not ineffective.

### C.    Factual Basis

Finally, Grulkey contends his plea counsel was ineffective because he allowed Grulkey to plead guilty to a crime for which there was no factual basis. We bypass the State's argument that Grulkey failed to preserve error on this claim, assume without deciding that he did, and proceed to the merits.

Plea counsel breaches an essential duty if counsel permits a defendant to plead guilty to a charge for which there is no factual basis. *Rhoades v. State*, 848 N.W.2d 22, 29 (Iowa 2014). In such circumstances, prejudice is presumed. *Id.* To determine whether there is a factual basis at the time of a guilty plea, we look at multiple sources within the record, including the defendant's statements and the minutes of testimony. *Id.* "When analyzing the record, we do not require the record 'to show the totality of evidence necessary to support a guilty conviction,' but only that the record demonstrates the facts to support the elements of the offense." *Id.* (quoting *State v. Ortiz*, 789 N.W.2d 761, 768 (Iowa 2010)).

Here, Grulkey pleaded guilty to burglary in the third degree as an aider and abettor. Burglary in the third degree occurs when a person enters an occupied structure that is not open to the public without permission and with the intent to commit a felony, assault, or theft therein. *See* Iowa Code §§ 713.1 (defining burglary), .6A(1) (defining burglary in the third degree as a class "D" felony). And all person who aid and abet the commission of crime "shall be charged, tried[,] and punished as principals." *Id.* § 703.1.

There is ample support in the record for Grulkey's guilty plea to burglary in the third degree as an aider and abettor. We start and end our discussion with Grulkey's written guilty plea. In that document signed by Grulkey, he admitted he "aid[ed] and abet[ted] another to enter a garage without permission with the intent to take construction materials contained inside." This admission alone provides a sufficient factual basis for Grulkey's guilty plea, so we need not address his arguments about claimed weaknesses in the minutes of testimony. *See State v. Philo*, 697 N.W.2d 481, 486 (Iowa 2005) (noting it is only necessary to look to other parts of the record to establish a factual basis if the defendant's statements are not enough).

Because there was a factual basis for Grulkey's guilty plea, his counsel did not allow him to plead guilty to a crime for which there was no factual basis, and counsel was not ineffective.

## IV.   Conclusion

Having rejected all Grulkey's ineffective-assistance-of-counsel claims, we affirm the district court's denial of his PCR application.

**AFFIRMED.**